### DOWELL & BOWMAN *v.* STEAMBOAT MELNOTTE.

The ground on which an admiralty lien does not attach to a boat for supplies furnished in a home port, is that they are presumed to have been supplied on the personal credit of the owners. This reason applies to the residence of the owners rather than to the place of the registry. In determining the home port for the purpose of deciding whether the case makes a maritime lien, the court will be governed by the residence of the owners.

The seizure and sale by the sheriff of a boat within the jurisdiction of the United States admiralty court, on a warrant under the watercraft law of Ohio, are void, and the purchaser of the boat at the sheriff's sale is entitled to have the purchase money refunded.

This case was reserved to General Term on a motion by Good, a purchaser of the steamboat Melnotte at sheriff's sale, to have the purchase money refunded to him because

he received no title to the boat, the sale being void for want of jurisdiction in this court which ordered the sale.

The suit of the plaintiffs, Dowell & Bowman, was commenced by a seizure of the boat under the watercraft law of Ohio, on the 2d July, 1866. Another suit was commenced on the 20th July, 1866, by Florer, under the same State watercraft law. On the same 20th July, an admiralty proceeding was commenced in the United States district court against this boat. Soon after, other suits were commenced in this court against the owners, and attachments procured and levied on the same boat; and on the 6th December, 1866, a sale was made by the sheriff, on the first proceeding under the watercraft law, to Mr. Good for $1,450, which purchase money was paid to the sheriff, and the possession of the boat delivered to the purchaser. But afterward the boat was sold by the United States marshal on the proceeding commenced July 20, 1866, but the purchaser gave up his purchase, and the sale was abandoned, on account of the doubt entertained of the validity of the seizure under the admiralty proceeding in the United States court, because the boat was in the hands of the sheriff, under process, at the time of the seizure in the admiralty. After the sheriff's sale, however, to Good, and the delivery of possession, the marshal renewed his seizure of the boat, on the process in his hands issued on a maritime lien, and on that seizure the boat was finally sold by the marshal to Isham, who received from the marshal the possession and title, leaving Good, the purchaser under the sheriff, with neither. Good now seeks to have his money refunded.

*W. M. Ramsey*, for Good, the purchaser at the sheriff's sale.

*Huston & Shunk; Hoadly, Jackson & Johnson; Lincoln, Smith, Warnock & Stephens*, and *Jordan, Jordan & Williams*, for different claimants of the fund on distribution.

Taft, J.   This motion is resisted on two grounds:

1. That Cincinnati, where the goods were furnished to the Melnotte, was her home port, and that consequently, the claim did not fall within the admiralty jurisdiction, and the proceeding under the watercraft law was valid.

2. That if that were not the case, the purchaser from the sheriff was entitled to avail himself of all the right which the sheriff had to the boat by virtue of any process in his hands, and, therefore, that he did take something; that, in fact, as the sheriff held the boat on the attachments as well as under the proceedings under the watercraft law, he acquired from the sheriff the possession and the property in the boat, subject only to the admiralty liens.   That he was bound to protect this title by resisting or paying off the admiralty liens, which were not enough to exhaust the value of the boat, and saving what could be saved, or to bear the loss himself.

In support of the first point, it is claimed that the registry, and not the residence of the owners, is to be regarded in determining which is the home port; and that the registry of this boat was at Cincinnati.   One of the owners resided in Covington, Kentucky, and the other at Rising Sun, Indiana; but no owner resided in Cincinnati.

The ground on which the admiralty lien does not attach to a boat for supplies furnished in a home port is, that they are presumed to have been supplied as the personal credit of the owners.   This reason applies evidently to the residence of the owners, rather than to the place of the registry.   We must, therefore, be governed, in determining the home port for the purpose of deciding whether the case makes a maritime lien, by the residence of the owners.   1 Conkling's U. S. Adm. 80; *The St. Iago de Cuba*, 9 Wheat. 417.   But it is not a question of State lines, as is stated in the opinion of Judge Thompson in the case just cited, by which it is to be understood, that a port may not be a home port, though it be in the same State where the supplies were furnished or the contract made.   If the

owners are not present, or at home, in the port where the debt was contracted for the ship by the captain, the presumption is, that the creditor dealt on the faith of the ship; and the fact that the owners were at home in some other place, or port in the same State, would not rebut that presumption. Would, then, the fact that one of the owners resided in Covington, very near to the port where these supplies were furnished, rebut the presumption that they were furnished on the credit of the boat, so as to exclude the admiralty jurisdiction from enforcing the liens?

It has not been so treated by the United States court in the present case; nor can we so hold. Notwithstanding the proximity of Covington to Cincinnati, we must hold that supplies furnished in Cincinnati to a boat owned in Covington may be presumed to be supplied on the credit of the boat, in order to sustain the lien in admiralty.

It is necessary now to consider the question whether Good took any right or interest by the sale for his purchase money, Cincinnati not being the home port of the vessel, and the boat being within the jurisdiction of the admiralty.

The sale was on the warrant under the watercraft law. We think that Good could not have supported his title to the boat by reference to the attachment which was in the hands of the sheriff. If the sale had been upon a valid judgment in attachment, it would have inured to the benefit of other executions in attachment in the hands of the sheriff, so that they would be entitled to share in the proceeds of the sale in their order. But in the case supposed, the sale would be valid, and the proceeds would be for distribution upon valid final process in the sheriff's hands under the provision of the statute. But in the present case, the sale itself is on void process, and being itself void, there can be no proceeds to appropriate to the payment of valid executions. The money has been paid under a mistake of fact, and belongs to the purchaser as much as it did before he placed it in the hands of the sheriff. No proceeds can result from a void sale; and a sheriff's sale

founded on void proceedings, must itself be void as completely as any sale would be, which one man should make of another man's property without authority from the owner. We think it can make no difference that the sheriff had in his hands process on which he could have made a valid sale, so long as he advertised and proceeded under the void, and not under the valid writ.

Our conclusion is that the motion must be granted refunding the money paid by Good on the sheriff's sale.